We'll call the call of Evan Huzinec v. Six Flags. Good morning. Good morning, Your Honor. May it please the court. My name is Patrick Rimes, along with my co-counsel, Michael Romano. We represent the plaintiff, Evan Huzinec, who is blinded. Could you speak up a little bit? I'm sorry. We represent the plaintiff, Evan Huzinec, who is blinded by a cell phone when he entered the defendant's amusement park. Blinded in both eyes or one eye? I'm sorry? Blinded in both eyes or one eye? One eye. Blinded in one eye. And he was a paying customer. When parents drop their kids off at an amusement park, they have an expectation that the amusement park will uphold their duty, their non-delegable duty to make their premises safe. On the record, they admitted their premises were not safe to Mr. Huzinec. Mr. Grimes, let me ask you this. Hypothetically speaking, all right, let's assume we agree with the district court judge's disqualification of your expert, all right? Do you need an expert to prove negligence in this case? No, Your Honor. And if not, did you pursue theories of negligence without the expert in the district court? Yes, Your Honor. Walk me through that. In fact, we got the defendants to admit their negligence on the record. I asked the defendants point blank, would your ride have been safer had you precluded cell phones from being brought onto the ride? Do you agree? Their answer, we agree. Do you need an expert to back that up? No. Or is that an issue that can be submitted to the jury? It's common, ordinary negligence. A high school student knows that you shouldn't drive around in a car going 70 miles an hour with your cell phone. This roller coaster went 70 miles an hour, and the adults are letting children bring cell phones onto that roller coaster. I understand, however, that there were signs in the entry to the park and before the ride commenced that says secure all objects. Put everything away. Make sure that you have nothing lingering or hanging out. Several signs, I understand. Why isn't that sufficient? Your Honor is correct. They do say secure your cell phones. But we have to understand, we're dealing with children. They're letting children bring their cell phones onto a roller coaster that goes up and down, torques and turns, twists and turns at 70 miles an hour. The girl who lost her cell phone was 14 years old from Brazil. You know what that 14-year-old kid wants to do when she goes back to Brazil? She wants to show all her friends on her cell phone, look what I did in America. I rode this roller coaster that's 70 miles an hour. That's what that 14-year-old wants to do. They're the adults. Six flags are the adults. And they put children in charge of safety. Besides signs, if I may ask, are there not announcements that say secure all objects and things like that? You can tell a kid to do this and that. Kids are going to be kids. But you don't disagree that there were not only signs, but verbal statements that you are to secure all objects, etc. Okay. Should the kids, if they're a smart kid, secure their cell phone? Yeah. Not every kid's going to do that. And the adults know that. The adults are making hundreds of thousands of dollars through the hundreds of thousands of people paying a hundred bucks just to walk in the gates. They have to go through a metal detector just to walk into the park. Yet, there's no metal detector to prevent kids from taking a cell phone onto a roller coaster? The lower court talked about a standard of care. I'd like to emphasize, this is not a standard of care case. This is an ordinary negligence case. This is not a professional malpractice case where I need an expert to prove the standard of care, get an affidavit of merit, and then get an expert to say they violated that. This is ordinary negligence. What do you suggest should have been done? What should have been done is demonstrated by the defendants themselves. You got the El Toro roller coaster. There's only one in the entire United States. Just yards away, there's the Kingda Ka roller coaster in the same park. Guess what the policy is for Kingda Ka? Cell phones are forbidden. Did the lower court discuss that when it discussed standard of care? If I may, is there not an announcement that says secure all objects? On Kingda Ka? You're not allowed to bring a cell phone on that roller coaster. The defendants themselves established the standard of care. We didn't need an expert to establish the standard of care. They did it themselves. Did you bring the other roller coaster to the attention of the district court? Yes. It's in the record. Kingda Ka, it's all through the depositions. And I asked them, after we filed this case and after Mr. Huzinik was blinded, too late. They changed their policy. They now forbid cell phones to be brought on to El Toro just like they do with Kingda Ka. What do you make of the videos? I understand that there was a series of videos. I think you introduced 10. And if somebody could turn their cell phone off, that would be greatly appreciated. The district court dismissed them as hearsay. Were they introduced for the truth of the matter or were they introduced to provide notice? That's a great question, and the answer is notice. You have to understand, this ain't no mom and pop shop. This is Six Flags Great Adventure making millions and millions and millions of dollars off of kids. They are a sophisticated entity. Even if those videos were not able to be introduced, they're on notice that this is going on. This is Six Flags. They have a marketing department. They have an advertising department. I'm sure we've all seen their television commercials. Are they aware of these videos that have been taken with cell phones? Yes. I sent them all to them. I sent them 100 videos. I mean before the accident. Before the accident, years and years. Years and years. They were aware that people were filming on the roller coaster. Yes. The kids, this is what they do. This is why I pointed out that there is only one El Toro roller coaster in the entire United States. I believe I would have been able to get those videos in when I questioned the defendant's witnesses. I never got there, unfortunately. Is this the El Toro? Yes. There's only one in the entire United States. You recognize it. These are people who worked for the company for 30 years. Their own expert, I shouldn't say expert, Director of Security, said the ride would have been safer had we not allowed cell phones onto this ride. Honestly, do you need an expert to tell us common sense? We really don't. I'm sorry, go ahead. I'm sorry. Could you adopt their head of security's testimony as your expert testimony? I would have called him as my first witness. I mean after the district court had excluded your expert, when this guy testified, could you say, Your Honor, I submit Mr. So-and-so as my expert? I would have used some of his testimony, not all of it, but even their own expert when I asked him, Who's responsible for making Mr. Huesnick safe? And his answer was, the defendants. Their own expert said that. They admit that my client was faultless. He walked into an amusement park, he paid money, expected to be protected, and they admit we didn't protect him. They admit their own ride was not safe. You didn't call an expert, did you? I'm sorry? I'm sorry. Did you call an expert? We had an expert, and the lower court ruled that the expert's qualifications were not sufficient. Why is that? The court, I respectfully submit. What rationale did the court give you for making that decision? The court, I respectfully submit, viewed this as a professional malpractice case, which it is not. It's a simple premises liability case, where ordinary negligence is the standard. The court, in its own decision, said, The standard of care in a negligence claim is flexible and fact-dependent, and negligence can be inferred from the circumstances. Do you object to the exclusion of the expert? We follow. We took a belt and suspenders approach to this case. We knew the facts were on our side. We said, let's get an expert anyway to say something commonsensical, like you shouldn't allow kids to bring cell phones onto a roller coaster. Any parent knows that. Was there not a sign somewhere that says, I think I saw one in Seaside Heights, New Jersey, that says secure all objects. Was there not such a sign? Six Flags advertises on the Internet. Again, we have a marketing department, an advertisement department. If you don't think Six Flags doesn't go on the Internet and see the YouTube videos that kids who ride the El Toro are posting online, taking their cell phones out. We hired a private investigator. I understand sometimes kids do what kids do. Exactly. I'm always asking, was there a sign that says secure all objects, put everything away before you enter the ride or you sit inside the ride car? The answer to that is yes. And I said the answer to that is yes. They tell kids, put your phone in a secure pocket. That's where I was heading to. Now, who's the adult here, the kid or the people who are educated? You say since kids. Kids are going to be kids. Yes, kids are apt to ignore things like that because they like their cell phones. But because of that, you say that the ride administrators are reliable to you or to your client? Six Flags is definitely reliable to my client. The lower court respectfully misapplied the law. This was a motion for summary judgment where every inference should have been given to Mr. Huesnick and the lower court didn't give a single inference to him who was blind. I haven't read the trial court's decision, but what rationale did the court give you for making that decision? The lower court ruled that we did not establish the standard of care. The lower court's opinion, the logic in the opinion is sound. I was reading the words from the lower court and I'm like, this is absolutely correct, what you are saying.  Did you actually give the court a proper standard of care? The standard of care in a negligence action, as the lower court said, is a flexible and fact-dependent and can be inferred from the circumstances. What are the circumstances here? The defendants admit my client was faultless. My client was a paying customer, an invitee, who deserves the highest degree of protection. He's no trespasser. He's not a licensee. He's an invitee. Let me get back to this notice issue real quickly because it's not clear in my copy of the appendix. There was a similar incident that happened when? A year before. Another patron was struck in the face by a cell phone on the same ride. We have the incident report. We provided it to them. Did they change their policy about allowing cell phones after they were on notice about another person getting struck in the face who could have been blinded? No, they didn't change their policy then. Their policy was defective. If there's one good thing that came out of this case, they changed their policy after I filed the lawsuit on a blind Mr. Huzanek. They changed it how, sir? Cell phones are no longer allowed on the El Toro roller coaster. My client takes a little bit of solace in that. Even though the lower court dismissed his case, I respectfully submit, wrongly. He should be allowed to have a jury determine the outcome of this case. Respectfully to the lower court, the lower court usurped its function and made itself the jury. It shouldn't have done it. Understood. I can't remember if you asked for rebuttal. I asked for four minutes. I don't know if I said it. All right. Good enough. We'll see you soon. Thank you. Good morning, counsel. Good morning, Your Honors. Heather Eichenbaum of Specter Gatton Rosen Vinci on behalf of the appellees, three different appellees, separate and distinct companies, Six Flags Great Adventure LLC, Six Flags Theme Parks, Inc., and Six Flags Entertainment Corporation. Is it correct, as counsel just said a moment ago, that Six Flags has changed its policy regarding cell phones after this incident? It has, Your Honor. And it has made that change for liability purposes, frankly, as opposed to any indication that precluding cell phones will prevent accidents. And I hesitate and I have debated, but I am going to let you know, I'm currently defending a case on a coaster at the park where it's not a cell phone, but it's a hat. A what? A hat. Oh, a hat. That hits someone in the eye. It doesn't have to be metal. Metal detectors are not the answer here. But isn't it helpful in reducing, at least, the number of objects that are taken on a roller coaster that potentially could injure other riders on the roller coaster? Respectfully, Your Honor, no. As indicated, and the only evidence in the record, is that prior to Mr. Huzinec there was one, one prior incident involving a cell phone. And we know none of the facts surrounding that report. I'll submit that it is hearsay. But even if we consider that one report, this ride, I would ask Your Honor to take judicial notice, and I believe it is in some of the depositions as well, but has been in operation since 2006. Fifteen plus years. Millions of riders. There is one other report of an individual being hit. The roller coaster right next to it prohibited taking cell phones on the roller coaster. It did, Your Honor. Why is the difference? The difference is because under the New Jersey law, the Carnival and Amusement Ride Safety Act, also known as CARSA, which is integral in this case, the manufacturer, not the owner and operator of the ride, but the manufacturer dictates what can be allowed and what cannot be allowed on a ride. It is explicitly clear in the CARSA regulations. The manufacturer, which ironically is the same manufacturer for the adjacent Kingda Ka and El Toro at issue in this case, identical manufacturer had different rules for the two rides. Now I can get into the reasons why, but frankly it has briefly to do with the forces that are involved in the ride. The fact that Kingda Ka you go straight up and then straight down. I'm getting a little sick of myself. So it's virtually impossible to fully secure. The restraints are different on the different rides, so you can't have, for instance, a fanny pack or some other secured pocket on Kingda Ka. There are a lot of factors that go into these determinations of what is allowed on a ride, what isn't allowed. Of course, nevertheless, it still is it not the determination of the operator, the owner and operator of the amusement park as to what can be allowed and not allowed on particular rides. Certainly the owner and operator would not want to have less precautions, but if from experience and if from knowledge that the requirement that cell phones be secured, the owner-operator knew that this risk was being increased, it would be appropriate, would it not, then, for the owner-operator to take steps to reduce and increase in risk? The owner-operator can take added steps beyond what the manufacturer dictates. That is correct. But Your Honor hit the key word there, and that is when they're on notice that this is a significant problem. This case has dramatic similarities to a litany of cases in New Jersey involving negligent security claims. The claim here really isn't that Six Flags Great Adventure didn't have the correct policies or procedures. It is that it didn't effectively monitor what patrons were bringing on the ride. Talk to me about the videos. I mean, the videos clearly demonstrate that people had their cell phones out, and they were, no? Go ahead. I don't mean to interrupt you. I'm sorry. You just did. So why don't you just go ahead and explain your position on the videos. I've been told I wear my expressions on my face. I apologize, Your Honor. No, Your Honor. Respectfully, those are unauthenticated videos where no witness has been named who can authenticate any of them. There is only one roller coaster called El Toro in the country. There are hundreds, if not more, of wooden roller coasters. These videos do not all say El Toro in the video. We also don't know, because they are unauthenticated and no foundation can be laid for them, when they were shot, under what circumstances they were shot, whether they have been altered in any significant ways, or even when they were posted online. These videos came from appellants' counsel in discovery. That is the extent of what we know about these videos. In addition to the lack of any evidence that anyone from any of the three defendants and companies had any knowledge of any of these videos. My firm has a website. I don't Google my firm name to see what people are posting about it. There is zero evidence in this case that anyone was aware of those videos, and there is no one saying that they should have been aware of them. Could not, though, someone watching El Toro have seen cell cameras out with people taking videos? Was there any evidence regarding that? The only evidence in the case, Your Honor, is that if and when any loose objects, not just cell phones, but hats are big. For some reason, people also don't want to take off their hats. By the way, this spans all generations, both with cell phones, loose change, and hats. People are loath to give up their belongings. But the only evidence is that any time any violation of the rule was seen, it was corrected. There is no indication, including in this case, otherwise. In other words, there is no evidence, and this is a significant problem for the plaintiff, Mr. Huzinek, there is no evidence that Ms. Valgado ever had her cell phone out within view of any employee. There is no evidence, and their expert admits there is no evidence, that anyone from Six Flags Great Adventure did see, could have seen, or should have seen. For all we know, she took that cell phone out mid-ride when, as Mr. Doyle admits, there is absolutely nothing my client can do. May I ask you... Well, no, let me say, there is something your client can do, and that is prohibit cell phones on the rod. Respectfully, Your Honor, there is no standard to support that. And in addition, I think it begs the baseline question here. Ms. Valgado violated a clearly posted multiple signs and announced multiple times rule. Why should we believe that she wouldn't have violated the rule saying she couldn't take her phone on? If she had to go through a metal detector. Your Honor, this comes back to CARSA. The judgment of whether metal detectors should be required at every amusement park is better left after expert study and weighing of the pros and cons, ramifications, impact on not just the parks, but the customers. The wait times for rides can already be two hours. We'd stretch them to four. The New Jersey legislature has spoken specifically and in depth through its CARSA regulations. It regulates every aspect of the amusement park industry in New Jersey, from manufacturers down to ride attendants. And it created those regulations after consulting experts. If the New Jersey legislature felt that there were a safety issue with loose objects, cell phones or otherwise, on rides, it clearly could have and would have included within the CARSA regulations a prohibition of loose objects on coasters. Is an expert necessary in a case like this? Yes. Or is this an issue of negligence that can be presented to a jury without expert testimony? Respectfully, Your Honor, it's not. An expert is required. Clearly we're in a diversity setting here. This is not a federal question of law. We are in diversity. So New Jersey state court law applies. There are two cases, both per curiam, Velazquez and Bom Tempo, in which the appellate division in both cases explicitly held that an expert was needed because of the particularized nature and terminology and all that goes into the amusement park operation. So you used an expert in this case. We did, Your Honor. And what was your expert's view as to how this incident occurred and why it was not the ride operator's fault? Your Honor, what this really comes down to is proximate cause. One person here and her guardians caused this accident. And oddly and inexplicably, Mr. Huzinek chose not to initiate suit. Why did you include the guardian? Because arguably, Your Honor, the guardian of Ms. Valgado negligently supervised her. We filed a third-party complaint against Ms. Valgado and the tour company and the two individuals who were there specifically as her adult guardians. Plaintiff chose not to. Interestingly enough, on that point, had they done so, they wouldn't have likely needed an expert on negligent supervision. That is an area where common law can be applied effectively without an expert. I have one other question. I know your time is moving on. But the trial judge in this case took the case away from the jury. And what was the rationale for that? Was it failure of proof on the part of the plaintiff or was there something else? It was multifold, Your Honor. The Honorable Chief Judge Wolfson found that Mr. Doyle was both unqualified and that his opinions lacked foundation. So he was precluded. She then went the step further and didn't leave her analysis there, but found that plaintiff had not proven a standard of care that had been breached. And I think with that, we have to come back to the question of what could we have done and how would that be implemented? And again, that goes back to CARSA and the need for an expert. It's not as simple as simply sticking up metal detectors for every single patron to walk through. Did you plead with the New Jersey state law about experts needed for amusement park operation? Absolutely, Your Honor. We did. And Her Honor, Judge Wolfson, agreed with us that an expert is needed in this case. But again, she went on, as Judge Fuentes was asking, and continued her analysis into the common law realm and indicated that even if an expert were not needed, plaintiff here, Mr. Huzinek, cannot make out his case. There is a lack of proximate cause here. There is insufficient notice of evidence. It isn't clear to me today, standing before the Third Circuit, what plaintiff truly believes is negligent here. Is it that anyone can bring a cell phone on the ride? Or is it only because she was 14? Is there a suggestion here that only minors can't have loose objects that they're entrusted to secure? Or is it everyone? There has been no opinion given on behalf of Mr. Huzinek in this case to even suggest what could have been done, should have been done, and to how broad a group of individuals. Well, something was done because the policy was changed, wasn't it? Yes. And as I indicated before, I'm currently defending a case where someone got hit in the eye with a hat. And he's not permanently blind, but he is alleging permanent eye damage. A metal detector wouldn't have made an ounce of difference. And that is why this case should not go to a jury which is not educated as to all of the intricacies involved in amusement park operations. Your Honor, I see my time has expired. Thank you for your attention. It's been a pleasure. Mr. Grimes? Thank you, Your Honor. I know I only have four minutes. I'll try to be brief. I'd like to pick up where Your Honor ended. Could you speak up for us? I'm sorry, Your Honor. You asked defense counsel, wasn't Six Flags on notice of this issue? I said. And she tried to claim not on notice. A cell phone in the hands of children can be a weapon. Okay, but I asked her another question. I said, the New Jersey state law that requires an expert to testify on standards of care in amusement parks requires an expert. And this is where we're not alleging a product liability case against the roller coaster. This is a routine premises liability case. Who's in charge of Your Honor's house? Your Honor. My grandson. Regardless of the facts. Your Honor. So Your Honor's going to make the rules, and Your Honor's going to make sure your home is safe for those who come into it, especially those paying you $100 just to walk through the door. Secondly, Your Honor also hit the nail on the head when you said, were the videos offered for notice or to prove the truth of the matter asserted? It's notice. What about the authentication issues counsel brings to our attention? When I was in law school, I was taught, when you want to introduce a photo at trial, you don't need the person who took the photo to authenticate it. You need to have the witness testify. Yeah, that's our roller coaster. That's our ride. In fact, there's only one in the entire United States. And here's 50 videos of people riding your roller coaster. Do I need the person who actually was on the ride to authenticate that video? No. It's on YouTube. My expert, my investigator. What about the Velasquez case? Velasquez? I'm sorry. Two New Jersey cases that Ms. Eichenbaum cited about New Jersey law on the requirement of experts. Were they about amusement parks? Were they about the operation of amusement parks, the premises of amusement parks? Great question. Here's what defense counsel just said. She sued the 14-year-old girl from Brazil, as well as her guide. I'm interested in experts. I'm not interested in third party. What she said was that guide didn't, that guide negligently supervised that 14-year-old kid. I'm talking about the operation of amusement parks and New Jersey state law on the operation of amusement parks. New Jersey state law requires, whenever there's an accident with serious injury, the defense are required to file a report with the state and put it on record. That's why a year before this case, they had to file that report. If, I was born at night. I wasn't born last night. If you think this is the first time anyone pulled a cell phone out. I'm talking about the standard of care under New Jersey law. And Ms. Eichenbach's statement that New Jersey law required expert testimony to establish the standard of care in the operation of an amusement park. Now, do you agree with that statement? Am I quoting her accurately? I agree. If we were challenging how the ride operated. Like there's a recent case, a kid just fell off a ride. Okay. That, yes. In that circumstance, yes. When, before you even get on the ride, should they have a policy which precludes cell phones from being on the ride? I thought they had some signs that indicate put all objects away and things like that. Secure all objects. So establishing that standard to determine whether there has been a breach of that standard. Do you need an expert as to what is the proper standard and what is a breach of that standard? Even the lower court said no. The lower court said the standard of care in a negligence claim is a flexible and fact dependent and can be inferred from the circumstances. The lower court, in its opinion, said you don't need an expert. For some reason, the lower court didn't follow its own sound logic. I see I'm out of time. Thank you very much. Thank you, counsel, for your arguments and your briefs. We'll take this under advisement and circle back to you soon. Thank you.